IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| JEREMY DRUMMOND,<br><br>  Plaintiff,<br><br>v.<br><br>RESPIRATORY SLEEP SOLUTIONS<br>DBA STRATUS NEURO,<br><br>  Defendant. | Civil Action No.<br><br>1:24-cv-00072 |

## RESPONSE IN OPPOSITION TO MOTION TO QUASH ATTORNEY FEE LIEN

The issue presented is whether law firms are "attorneys of record" and able to bring an attorneys' fee lien for work performed while at the firm, when an attorney who worked for the firm has left the firm and taken the client. Barrett & Farahany has filed such a lien, and Respondent argues that only the departed attorneys who took the client are able to file attorney fee liens. This, however, is simply not true. *Goldberg & Associates v. Donohoe,* 777 So. 2d 144 (2000).

The facts underlying this lien are undisputed. Over three years ago, Jeremy Drummond entered into a representation agreement with Barrett & Farahany to represent his interests against his employer on a contingency basis.[1] Exhibit A. This fee agreement was signed by Kira Fonteneau, on behalf of of Barrett & Farahany. *Id.* On March 6, 2024, Barrett & Farahany filed a Complaint on behalf of Mr. Drummond. [Docket #1, pp. 9, 12, 14, 15, 18]. Discovery was served on Mr. Drummond at Barrett & Farahany on August 2, 2024. *Id.* at 17. On September 10th, Ms. Fonteneau announced her intent to start her own firm with Severin Roberts, a Georgia attorney employed with Barrett & Farahany. On September 25, Ms. Fonteneau's employment with Barrett & Farahany ended. Around October 5, 2024, Ms. Fonteneau informed Barrett & Farahany that Mr. Drummond had elected to terminate Barrett & Farahany's representation. Exhibit B, Affidavit of Amanda A. Farahany. During this transition period, Ms. Fonteneau resolved Mr. Drummond's matter. Respondent Motion to Quash, paragraph 6.[2] On November 5, 2024, for the first time, the Workers' Firm, filed an entry of appearance. Docket. #22. The next day, Barrett & Farahany filed its lien[3]. Docket #23. Three days later, Respondent filed it Motion to Quash. Docket # 24.

---

[1] In addition to the right to file a lien under 34-3-61, Claimant could also assert its right under the contract signed by Mr. Drummond expressly allowing for the filing of a lien.

2

Over twenty-four years ago, the Court of Civil Appeals of Alabama overturned the trial court that held that a law firm was not entitled to a lien under the Alabama lien statute, when the firm's attorney had left the firm and taken the client. This situation is indistinguishable from *Goldberg & Associates v. Donohoe,* 777 So. 2d 144 (2000).

In *Goldberg,* Billy Kenneth Benson (Plaintiff) hired Goldberg & Associates (law firm) in 1996 to represent him in an action against his employer. Goldberg & Associates filed a complaint on the Plaintiff's behalf against his employer. Three years after hiring the law firm, in February 1999, the Plaintiff terminated the law firm and hired Cathy Donohoe. Until February 1999, Donohoe had been employed as an attorney for Goldberg & Associates. In May 1999, Goldberg & Associates sought to obtain a quantum meruit lien on the attorney fee awarded in that action. In holding that Ala. Code 1975, § 34-3-61, applied, the Court held that the trial court erred in failing to award some portion of the attorney fee to his former attorneys, Goldberg & Associates, and remanded to the trial court to determine what portion of the attorney's fees were owed to the law firm.

---

[2] Although Respondent has provided no evidence to support her assertions in her motion, B&F does not dispute that Ms. Fonteneau and her new partner settled this and other matters, including several that had already been paid fully to the new firm prior to the filing of the liens, offering B&F 10% of the fees it received.

[3] Throughout its pleading, Respondent states that Cooper filed a lien. Cooper filed on behalf of Barrett & Farahany.

The *Goldberg* court, citing the Alabama Supreme Court, explained that the purpose behind the statute was to protect the attorney – Goldberg & Associates – from loss of its investment of time, effort and learning and the loss of funds used in serving the interest of the client. It further explained that the protection is not limited to attorneys of record at the time of settlement or when judgment is rendered. Indeed, a discharged *firm* is entitled to a fee recovery based on the quantum meruit for the reasonable value of services it had rendered. *Goldberg,* citing *Gaines, Gaines & Gaines, P.C. v. Hare,Wynn, Newell & Newton,* 554 So. 2d 445 (Ala. Civ. App. 1989) (Court of Civil Appeals affirmed that discharged firm is entitled to a fee recovery based on the theory of quantum meruit).

5

The *Goldberg* court further explained that the well-established rule in Alabama is that upon the discharge by a client, the prior part performance of a contract entitles the attorney – Goldberg & Associates – to recover for those services rendered. *Id.* at 145. (internal citations omitted). "This appears to be the prevailing rule where the contract, as here, called for a contingent fee." *Id.* The rule in Alabama is that an attorney, including a law firm, discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated for the services rendered before discharge. *Id.* In reversing and remanding, the Court held that the trial court was to determine the amount of attorney fees that should be awarded to the law firm.

Goldberg & Associates is but one of a long line of cases brought by law firms to protect firm's losses from investment of time, effort and funds used in serving the interest of the client, both before and since the *Goldberg* ruling. See for example, *Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton,* 554 So. 2d 445 (Ala. Civ. App. 1989), *Rose v. Penn & Seaborn*, LLC, 295 So. 3d 94 (2019), *Ex parte Lambert Law Firm, LLC,* 156 So. 3d 939, 941 (Ala. 2014), *Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. v. Dubois,* 266 So. 3d 1064, 1081 (Ala Civ. App. 2017) (law firm entitled to fee), *Harris v. Cappell & Howard, P.C.,* 280 So. 3d 419, (Ala. Civ. App. 2019). Even though there is a virtually absolute right to terminate the attorney-client relationship in Alabama, that right does not allow the client to escape its obligation to pay an attorney for services rendered. *National Filtronics, Inc. v. Sherwood Land, Ltd.,* 428 So.2d 11, 15 (Ala. 1983).

Indeed, if the statements made by Respondent's attorney are true – that this matter was resolved prior to his terminating his agreement with Barrett & Farahany, then Respondent owes Barrett & Farahany the entirety of the fee. See Exhibit A, Representation Agreement. Respondent's attorney may be entitled to a quantum meruit of fees for any value provided after Barrett & Farahany settled Mr. Drummond's claims, but it is Barrett & Farahany who is entitled to the full contingent fee, and Respondent's attorney who should be seeking to prove any value provided after the settlement was reached in this matter at Barrett & Farahany.

Respondent's arguments likewise fail under its legal theory that only Respondent's departed attorney have the right to bring a lien. The *Eaton* case cited by Respondent does not apply here. In the 1991 *Eaton* case, decided before *Goldberg,* the general partner of two no longer-existing law firms was not a proper party to claim or enforce a lien. Because the general partner herself had never been an attorney of record, and because the law firms did not bring claims under the lien statute (likely because the firms were defunct), the general partner herself did not have the capacity to bring a lien. *Eaton* did not address nor decide whether a law firm could file a lien, an issue squarely addressed in *Goldberg* after *Eaton.*

*Twin Pines* also does not apply here. In *Twin Pines,* the district court held that the Friedman firm never entered an appearance on behalf of the client, Twin Pines, during the litigation, despite that the Freidman Firm had a representation agreement with Twin Pines. There is no dispute here that Barrett & Farahany had entered multiple appearances in this matter, as is apparent on all the pleadings in the case until well after the settlement of this matter.

Respondent's argument that a client can terminate its representation of a firm, after the settlement of its case, and not owe the firm its full fees is contrary to the well settled law in Alabama and throughout the country. The Alabama Attorney Lien statute, its progeny of cases, and contract law between clients and their legal representatives also follow the strong public policy that require clients to pay attorneys' for their work, and prohibit lawyers from gaining a windfall by diverting fees in settled matters to themselves by departing a firm.

The second issue raised by Respondent is whether Barrett & Farahany has perfected its lien. [4] Respondent provides no law to support its argument that in filing a lien, it must be supported with evidence at the time of the filing of the lien. Instead, Respondent argues, without legal support, that the Court should quash the lien for lack of evidentiary support.. This is because there is no legal support for this argument either. In each of the cases Claimant cited, a trial court determined the quantum meruit value of services, typically after a hearing on the merits where testimony and evidence were presented to the trial court. Although Respondent is correct that it is generally recognized that the "first yardstick that is used by the trial judges is the time consumed," that is not applicable in the instant matter.

---

[4] Respondent again refers to Cooper, who signed the pleadings on B&F's behalf, rather than B&F. The liens are not asserted for work Cooper did, but for work Barrett & Farahany did. Notably, the liens are signed by "Barrett & Farahany," with Cooper's signature placed below the name of the firm. Respondent's attempt to reframe the lien as one from Cooper, rather than from Barrett & Farahany, is not grounded.

In this matter, without any affidavit to support it, Ms. Fonteneau submitted what is purported to be the entirety of her time records for Mr. Drummond. A reading of the docket and those time entries reveal that Ms. Fonteneau has not accounted for much more than a few emails, and not for the work that is shown on the docket filed by her on Mr. Drummond's behalf. Ms. Fonteneau admits that she did not maintain any additional time in the Barrett & Farahany system. Indeed, there are no time entries for work for the first years of representation for Mr. Drummond. That there are no time entries is not uncommon in cases taken on a contingency basis. But time is not the only measure used to determine the quantum meruit value of services.[5]

When determining the appropriate compensation due to an attorney, the trial court is to consider the various factors outlined in *Peebles v. Miley,* 439 So. 2d 137, 141-43 (Ala. 1983).

> "The complete list of criteria used in the estimation of the value of an attorney's services now includes the following: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the

---

[5] Indeed, Respondent's own citation was a case in which the trial court determined that the quantum meruit was a percentage of fees on a contingent basis, rather than for a sum certain based on time spent.

professional experience and reputation of the attorney; (5) the weight of his responsibilities; **(6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship**; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." (bold added)

Indeed, in the only citation Respondent cited in this portion of his motion, the Court held that the amount of fees the trial court awarded "could have been based on the trial court's assessment of what would have been a reasonable percentage of the recovery after evaluating the outcome and measure of success." *Harris v. Capell & Howard, P.C.* 280 So. 3d 419, 426 (Ala. Civ. App. 2019).  See also *Diamond Concrete & Slabs, LLC. V. Andalusia-Opp Airport Auth.,* 181 So. 3d at 1076 (reasonable fee can be equivalent to a percentage of the amount recovered).

Because the value of services is being decided between the same attorneys, but at different firms, many of the factors do not help determine the quantum meruit value of those services.  Factors six through nine, however, are applicable. Mr. Drummond was represented on a contingency basis.  All the expenses on Mr.

11

Drummond's behalf were paid by Barrett & Farahany. None have been reimbursed. Because Ms. Fonteneau refuses to identify the settlement amount on any of the settlements for the 150+ clients she and her colleagues took from Barrett & Farahany, B&F is unable to identify the measure of success in this or other matters. But this is also not dispositive because what *can be* quantified is the nature and length of the professional relationship between Drummond and the firm he hired to represent him, Barrett & Farahany.

Here, the client was represented on a contingency basis for 1,051 days (about three years) at Barrett & Farahany, and approximately <u>four days</u> by Ms. Fonteneau at the new firm. Ms. Wilson, who also entered her appearance in this matter, remained at Barrett & Farahany beyond the settlement in this matter, working on this matter while still employed at Barrett & Farahany. The entirety of the pre-litigation phase and all entries on the docket for Mr. Drummond were while B&F represented Mr. Drummond. According to Respondent, the settlement was reached while at Barrett & Farahany. Assuming arguendo that Mr. Drummond could prove that he did not owe Barrett & Farahany the entirety of its contingent fee, applying the *Peebles* factor of the length of the relationship, the quantum meruit value of the services would be 99.53% (four days divided by 1,055 days) of the fee in the matter, plus Barrett & Farahany's expenses incurred of $879.91.

Claimant requests that Respondent be ordered to pay Barrett & Farahany its contingent fee of 45% of his recovery plus expenses of $879.91, or that Respondent be ordered to pay 99.53% of the contingent fee plus expenses and that the remainder be paid to the Workers Firm, his new counsel.

Respectfully submitted this 24th day of November, 2024.

**BARRETT & FARAHANY**

/s/ *Constance Cooper*
Constance Cooper
Alabama Bar No. 4276G33S

P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
constance@justiceatwork.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| JEREMY DRUMMOND,<br><br>    Plaintiff,<br><br>v.<br><br>RESPIRATORY SLEEP SOLUTIONS DBA STRATUS NEURO,<br><br>    Defendant. | Civil Action No.<br><br>1:24-cv-00072 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing *Plaintiff's Response in Opposition to Motion to Quash Attorney Fee Lien* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

Respectfully submitted this 24th day of November, 2024.

**BARRETT & FARAHANY**

/s/ *Constance Cooper*
Constance Cooper
Alabama Bar No. 4276G33S