Exhibit B

## DECLARATION OF AMANADA FARAHANY

I, Amanda Farahany, declare as follows.

1. My name is Amanda Farahany.  I am legally competent to make this Declaration.

2. I am a licensed attorney and have been since 1998.  I am the sole owner and principal in Barrett & Farahany, LLC (B&F), a law firm principally practicing in the plaintiff's employment and civil rights arenas.

3. B&F has from time to time hired other attorneys practicing in those areas, including Ms. Kira Fonteneau, who was hired in 2021.

4. During all times at B&F, Ms. Fonteneau was a W-2 employee who was compensated on a revenue share of her settled cases.

5. For several cases, Fonteneau had existing clients that were party to a pre-2021 engagement agreement with her old firm.  B&F assumed representation of those clients, including Jeremy Drummond.

6. As part of her employment, Fonteneau executed a formal employment agreement with B&F, which has express provisions as to her duties to both firm and clients, as well as outlines the potential consequences should she have demonstrated behavior antithetical to B&F interests, including solicitation of firm personnel.  It also includes a procedure aligned with all ethical rules to handle client election choices for departing attorneys.

7. On September 10, 2024, Fonteneau announced to the firm's CEO that she had decided to start her own practice with Severin Roberts, another attorney in the firm.  At that time, known to the two, I was in Tehran, Iran because on September 5th, while flying in to Iran with my father, my mother passed away on the plane.  I

flew on September 6th to Iran to help my father return to the US, and to bring my mother's remains home for proper treatment, here in the United States.  Given the difficulties with the international relations between Iran and the United States, this process (and attendant funeral and other arrangements) kept me away from the active practice of law for several weeks, including in Iran for twelve days and to prepare for and attend my mother's memorial service in Charlotte, NC, on September 25th

8. On September 11, 2024, Fonteneau and Severin Roberts formed "The Worker's Firm," an entity registered to do business in both Alabama and Georgia; and formed in both states on that date. The Registered Agent's address for legal purposes was space in Birmingham, Alabama that B&F had been occupying since 2021 and was paying for at the time.

9. When I returned to the United States, I learned that Fonteneau and Roberts had been soliciting other employees of the firm from September 10th to their new firm, including lawyers and staff, while still employed with Barrett & Farahany.

10. I hired Darren Summerville and The Summerville Firm, LLC to handle the internal issues that Fonteneau and Roberts were causing.

11. Fonteneau's employment with B&F was terminated on September 25, 2024, given her breaches of her employment agreement.

12. During this period of time, Fonteneau and Roberts solicited multiple other attorneys and staff, and was able to solicit six other attorneys and several staff members to their new firm, including Patricia Gill, whose last day with Barrett & Farahany was October 25th.

13. From at least September 25th to October 25th, Fonteneau directed B&F employees to work on the Workers Firm matters. Those time entries, and many others, were not maintained in the firm's timekeeping system. Additionally, prior to that time, B&F attorneys working under Fonteneau's supervision stopped tracking their time in the B&F systems.

14. Ms. Fonteneau tracked her time in a system outside of the firm's systems.

15. After retaining counsel, B&F asked that the two now-competing firms, under governing Bar Rules, send "election" letters to clients, informing clients of the potential avenues of representation – that is, remain with B&F; elect to proceed with The Workers' Firm; or chose a different firm entirely.

16. During this period, I learned from a client that Ms. Fonteneau had contacted her and asked her to sign an election letter with a pre-selected choice – that is, that the client would "elect" The Workers' Firm (i.e., the PDF for the client to electronically sign already had an election of firms to choose from). The client informed me that when she spoke with Fonteneau, Fonteneau did not explain to the client that Fonteneau was no longer with the firm. The client relays that she was unaware of what she had signed but believed that Fonteneau was with Barrett & Farahany.

17. Other election letters were also of concern to me. For example, election letters sent by Mr. Roberts included an instruction that B&F clients that elected to **remain** with B&F should direct their response to an amanda@theworkersfirm.com (the new firm's domain), an e-mail that was only

accessible to The Workers' Firm – that is, a client electing to remain with B&F would inform **only** The Workers' Firm, and not B&F.

18. Abruptly after Fonteneau and others left to form The Workers' Firm, several cases, including this one, settled. The vast majority of those cases involved contingency fee contracts, either with B&F, or a predecessor firm that pledged the client to pay a percentage of monies recovered, in exchange for the legal services provided.

19. For example, on September 25th, the same day she was terminated, Fonteneau attended a mediation and settled a case for a B&F client.  She directed the entire fee to her new firm, despite that no work had been done by the new firm and despite that Ms. Fonteneau was still working under the B&F fee agreement to represent the client on a contingency basis at the mediation that day.  Ms. Fonteneau did not make the firm aware of this settlement.

20. Ms. Gill, whose time not working for B&F is less than three weeks, also apparently immediately resolved several cases

21. After learning of those settlements, B&F filed a lien to preserve B&F's claim for attorneys' fees and expenses, based upon the substantial expenses and services given to these clients while at B&F.  The lien was filed for the firm by a B&F Alabama-barred attorney, Constance Cooper.

22.  While trying to quantify the time and expenses spent on the cases, it became clear that those reporting to Ms. Fonteneau had stopped contemporaneously recording time invested in a given matter.  Several cases under Fonteneau's

purview did not have any time entered for months before her termination or she had not entered time entries at all.

23. In this case and others, Fonteneau and The Workers' Firm have taken the position that there can be no valid lien under Alabama Code § 34-3-61 for the work they performed on behalf of the firm while at B&F because Fonteneau and the other attorneys have left the firm.

24. To protect the client interests involved, B&F has offered (in every case in which a lien is asserted) to resolve the lien inside the amounts owed for attorneys' fees, and to allow for the full amount of funds owed to the client to be disbursed immediately to the client.

25. In every case, the amount that is owed to the client is quantifiable based on the expenses in the matter, and the contingency fee agreement with the client.

26. Barrett & Farahany's position has and will always remain that the client's portion of the funds should be distributed immediately so that the client's rights and interests are preserved.

27. Barrett & Farahany's lien for quantum meruit is solely against the attorneys' fees and expenses portion of the settlement, and Barrett & Farahany waives any amount owed that is above the fees and expenses that the client owes based on the contingency fee agreement with the client.

28. Additionally, B&F has offered to have the contingency fee and expenses owed by the client to B&F, The Workers' Firm, and otherwise, be **reserved** in any trust account to allow for the client to be fully and immediately compensated, and to allow for any fee issues to be resolved between the parties.

29. In other words, B&F's position is that the client's portion of any settlement amount should be disbursed to the client **now** and the amount in dispute set aside to allow for the parties to resolve the liens as appropriate on a case-by-case basis based on the value of the services provided before and after the former B&F attorneys departed from the firm.

30. According to my counsel, in a nearly hour-long conversation between B&F's counsel and Fonteneau, that offer was rejected.

31. For the Court's review, I attach Fonteneau's employment contract (Exhibit 1).

32. In accordance with the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of November, 2024.

s/Amanda A. Farahany
Amanda Farahany

Exhibit 1

## CONFIDENTIAL ATTORNEY EMPLOYMENT AGREEMENT

**THIS CONFIDENTIAL ATTORNEY EMPLOYMENT AGREEMENT** (the "Agreement") is made and entered into as of April 8, 2021, by and between Barrett & Farahany, a limited liability partnership organized under the laws of the State of Georgia (herein called the "Firm"), and Kira Fonteneau, an attorney-at-law duly licensed to render legal services to the public in the States of Alabama, Georgia and Virginia ("Attorney")(collectively, the "Parties").

## W I T N E S S E T H

**WHEREAS**, both the Firm and Attorney desire that Attorney work at the Firm as an Attorney;

**NOW, THEREFORE**, in consideration of the mutual covenants, promises, representations, and warranties set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    **Definitions.**

"Actual Fee Paid to the Firm" means the total of all fees paid to the firm from a contingency settlement, reduced by any co-counsel fee paid to another Attorney or Firm other than B&F, and reduced by any costs or expenses not recouped by the Attorney in the settlement.

"Affiliate" shall mean any Entity of which Amanda Farahany is an officer, director, or partner or holds an equity interest or ownership that accounts for fifty percent (50%) or more of the voting rights or equity interest of such Entity.

"Attorney Cases" shall mean (i) all Cases in which Attorney acts as the sole attorney representing the interests of the client(s); (ii) all Cases referred to Attorney; and (iii) all Cases in which Attorney acts as the sole attorney representing the interests of the client(s) which is thereafter referred by Attorney or Managing Partner to another law firm other than the Firm or to any attorney not employed by the Firm.

"Attorney Fees" shall mean all Legal Fees paid to the Firm from the representation of clients in all Attorney Cases, plus a percentage (which percentage shall be determined by Managing Partner in her sole and absolute discretion) of all Legal Fees paid to the Firm from Cases which were previously Attorney Cases and are then reassigned to another attorney in the Firm.

"Fees Earned" shall mean the total of the "Final Fee Paid to the Firm" times the Attorney's Role in this case distributed by the following roles on the case:  Attorney Requested (8%); Responsible Attorney (50%); Negotiating Attorney (14.5%); Responsible Staff (21.5%); Supervising Attorney (6%).  Working attorney and working staff roles will

1

be reduced, based on the percentage earned, from the Responsible Attorney and Responsible Staff roles.  In addition to the fees on matters settled, all hourly fees are added to the Fees Earned based on the fees earned by the timekeepers.

"Firm Fees" shall mean all Legal Fees paid to the Firm from all Settled Cases in which the Firm or any attorney employed by the Firm represents a client(s).

"Firm's Business" shall mean the practice of law primarily representing plaintiffs as clients in Cases, including all Cases of the type conducted, authorized, offered, or provided by the Firm within the period of two (2) years prior to the termination of this Agreement for any reason.

"Cases" shall mean all matters, lawsuits, claims, administrative proceedings, or actions of any kind in which a client(s) is represented by a law firm or duly licensed attorney(s) for any matters related to the Firm's Business.

"Legal Fees" shall mean all legal fees or compensation of any kind, excluding all reimbursements for out-of-pocket costs or expenses, paid to a law firm or duly licensed attorney from the representation of a client(s) in Cases.

"Managing Partner" shall mean Amanda A. Farahany.

2.    **Employment.**  Commencing on September 1, 2021, (the "Start Date"), the Firm shall employ Attorney to render legal services to the Clients of the Firm and to perform such other duties as may be assigned to Attorney from time to time by the Firm.

3.    **Performance and Duties.**  Attorney agrees to devote Attorney's full time and attention to the practice of law and to the business of the Firm and agrees to assist members of the Firm as requested. Attorney will represent clients in such Cases as shall be assigned and directed to Attorney by Managing Partner and in such manner and subject to the direction of Managing Partner as shall be determined by Managing Partner in her sole and absolute discretion consistent with Attorney's obligations to the clients under the applicable Rules of Professional Conduct, and Attorney shall further perform all such other duties and undertake all such other responsibilities as shall be assigned to Attorney by Managing Partner from time to time. Attorney will at all times abide by the Firm's personnel policies as applicable, as are in effect from time to time, will follow the Firm's Lawyer's Creed and Characteristics of B&F and Core Values, and will faithfully, industriously and to the best of Attorney's ability, experience and talents perform all of the duties that may be required of and from Attorney pursuant to the terms hereof.

4.    **Exclusive Employment.**  During Attorney's employment under this Agreement, Attorney will not engage in the practice of law outside of the Firm or actively engage in any business for Attorney's own account which would materially interfere with Attorney's obligations undertaken herein; *provided*, *however*, that nothing in this Agreement shall prevent Attorney from engaging in other business or making passive investments

using Attorney's personal assets so long as such investments do not conflict with or interfere with the performance of Attorney's duties under this Agreement.

5.   **Term.**   Attorney shall be employed solely as an employee at-will beginning on the Start Date, and nothing contained in this Agreement shall be construed to change Attorney's status as an at-will employee or imply that this Agreement is for a specified term or duration.

6.   **Compensation.**   For services to the Firm, the Attorney shall be compensated as follows:

   a.   Attorney shall receive the compensation package as identified in Exhibit B and C to perform the roles, responsibilities and expectations identified in Exhibit A.   In addition, the Firm shall provide Attorney with enough new cases to meet the stated expectations of Attorney in Exhibit A.

   b.   **Attorney Benefits.**   During the entirety of the Term, Attorney shall receive all benefits in such form and in such manner and at such times as the Firm, in the exercise of its sole and absolute discretion, shall from time to time adopt and establish for its employees generally, including but not limited to major medical health insurance coverage, and the availability of a 401K qualified retirement plan, and in addition thereto the Firm shall pay all premiums for professional liability insurance to cover the legal services rendered by Attorney while working as an employee of the Firm (said professional liability insurance shall be with a company and with such limits, deductibles and terms as shall be determined by Managing Partner in her sole discretion)("collectively the "Benefits" as identified in Exhibit B).

7.   **Conditions of Employment.**   Attorney agrees to conditions of Attorney's employment by the Firm as follows:

   a.   **Professional Standing.**   Attorney agrees to maintain Attorney's status as an active member in good standing of the bar of all jurisdictions, courts, and administrative agencies on or before which Attorney is, as of the date hereof, authorized to practice law or appear in a representative capacity and to seek admission to the bar of any other jurisdiction, court, and administrative agency, either on a permanent or pro hac vice basis, as needed,   if such action shall be determined by the Firm to be in the best interest of the Firm; to maintain an active membership in all bar associations and other professional organizations of which Attorney is an active member as of the date hereof; and to seek membership in any other bar association or professional organization if such action shall be determined by the Firm to be in the best interest of the Firm.

   b.   **Maintenance of Professional Competence.**   Attorney agrees to attend all continuing legal education courses, institutes, or seminars which the Firm

3

from time to time may determine to be necessary to insure the maintenance of Attorney's professional competence and to the extent necessary, to also attend continuing legal education courses sufficient to maintain his status as an attorney in good standing with the Georgia Bar.

c. **Adherence to Rules of Professional Conduct.** At all times, Attorney shall comply with all of the applicable provisions of the Rules of Professional Conduct, Rules of Professional Responsibility, and the statutes, rules, and regulations covering all professional services that Attorney shall render.

d. **No Disclosure of Client Confidential Information.** Attorney agrees that Attorney will not disclose to any person who is not a member or employee of the Firm any information, whether privileged, secret, or otherwise of any kind or nature, pertaining to any Client of the Firm acquired by Attorney while in the employ of the Firm in Attorney's capacity as an attorney-at-law unless with the specific written consent of the Firm and of the Client involved.

e. **No Disclosure of the Firm's Confidential Information.**

   i. Attorney acknowledges and agrees that the Firm's Confidential Information has been developed as the result of substantial amounts of time, effort, and expense in developing such information.

   ii. Attorney shall not remove or disclose any of the Firm's Confidential Information during the term of this Agreement and for the time period constituting the lesser of: (a) as long as such information constitutes Confidential Information; or (b) the maximum period allowed under Georgia law. Notwithstanding the previous sentence, Attorney may disclose Confidential Information during such restricted time periods if (a) Attorney is so directed in advance and in writing by Firm; or (b) Attorney is so required by a court of law or other government authority and Attorney provides the Firm with notice of such required disclosure as soon as possible but in no event later than two days after the date of disclosure. The parties expressly recognize and agree that this Subsection's grant of a potentially unlimited time period and unlimited geographic area of protection for Confidential Information is expressly recognized and permitted pursuant to O.C.G.A. § 13-8-53(e).

   iii. "Confidential Information" means information, other than Trade Secrets, that is of value to its owner and is treated by its owner as confidential, including, but not limited to: (a) any useful process, formula, composition of matter, or device which (i) is new or which Attorney has a reasonable basis to believe may be new, (ii) is being used or studied by the Firm and is not described in a patent, and (iii) is not readily ascertainable from inspection of any commercially available product of the Firm; (b) any engineering, technical, or product specifi-

4

cations of any current or future product of the Firm; (c) any computer software (whether in source or object code) and all flow charts, algorithms, coding sheets, design concepts, test data, or documentation related thereto, whether or not copyrighted, patented, or patentable, including all forms, checklists, documents or other methods used by the firm; (d) information concerning the Firm's pricing strategies, licensing strategies, and advertising campaigns; (e) information regarding the Firm's employees, personnel assignments, customers, and suppliers; (f) the Firm's financial information; (g) the Firm's training, policy, and procedure manuals; (h) the terms and conditions of this Agreement; (i) information received by the Firm from a third party pursuant to an obligation of confidentiality; (j) Firm Referral Sources, and (k) any data or information defined herein as a Trade Secret, but which is determined by a court of competent jurisdiction not be a trade secret under applicable law.

iv. "Trade Secrets" means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a system, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential clients or suppliers which is not commonly known by or available to the public and which information: (a) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

v. **Duty to Inform.** Attorney shall at any time and from time to time on demand, use his best efforts advise and inform the Firm of all Confidential Information, as defined herein, possessed or known by or entrusted to Attorney so that the Firm may know at all times the extent to which knowledge of Confidential Information is being utilized or is possessed or known by Attorney.

f. **Travel.** Attorney agrees to travel whenever such travel is required in connection with the business of the Firm. Attorney will be reimbursed automobile mileage or other travel expenses related to Firm Business.

g. **Case Expenses.**

i. The parties acknowledge that Attorney will incur certain out of pocket expenses and costs while providing legal representation of the interests of the clients in the Attorney Cases. The parties hereby stipulate and agree that Attorney shall not incur any such out of pocket expenses or costs without the prior approval and consent of the Firm Administra-

5

        tor, except for filing fees, deposition transcripts ordered for the purpose of summary judgment or preparation for motions or depositions, mediation and legal research.

    ii.    All cases with costs incurred of more than $5,000.00 must be approved by a supervising attorney or the managing partner's designee.

    iii.    Attorney shall be responsible for all case expenses, liens, medical expenses, and any other charges regarding Attorney's resolved cases which are not properly collected by the Firm before the file is closed after a settlement. Such uncollected amounts due the Firm will be deducted from any bonuses due.

h.   **Compensation from Other Sources.** Attorney agrees that if Attorney shall be personally compensated by a third party for referring legal matters that resulted from Barrett & Farahany's marketing efforts to other attorneys or law firms, Attorney will forthwith account for and pay over such compensation to the Firm unless the Firm shall determine that such action is not necessary under the particular circumstances involved. Prior to any such engagement, approval must be in writing and signed by the Firm. Should Attorney be compensated to serve as an executor, trustee, or guardian for a family member, Attorney shall be allowed to retain such compensation. However, prior to serving in any of those roles, Attorney must obtain written approval from the Firm. *Attorney acknowledges that failure to account for and pay over such compensation to the Firm shall, in addition to being a breach of contract, expose Attorney to tort liability of compensatory damages, disgorgement of compensation, and punitive damages.* The Firm recognizes and agrees that Attorney may receive amounts owed to her from her former firm, The Fonteneau Firm LLC for fees which may received by that firm subsequent to the date of this agreement.

i.    **Non-Solicitation of Personnel.** During the term of this Agreement and for a period of one (1) year from the date of termination of Attorney's employment relationship with the Firm for any reason, Attorney shall not either directly or indirectly, on Attorney's own behalf or in the service of or assisting others, recruit, solicit, divert, or hire, or attempt to recruit, solicit, divert, or hire, any employee or contractor of the Firm to end his or her employment or contract with the Firm, or to enter into any employment, contract, or relationship with Attorney other than through the Firm, or with any organization which Attorney is a participant in any capacity whatsoever. However, in the event of a separation of employment, nothing in this agreement shall prevent her from soliciting Birmingham staff to include attorneys, partners or other exempt or non-exempt employees.

j. **Extension.**  In the event of the violation by Attorney of any of the covenants contained in this paragraph 7(a), (c), (d), (e), (g), or (i) of this Agreement, the period of restraint contained in said covenant(s) shall be automatically tolled and suspended for the amount of time that a court or an arbitrator of competent jurisdiction determines said violation continued, provided that the Firm seeks enforcement promptly after discovery of said violation.

k. **Severability.**  All provisions and covenants contained in this paragraph 7 are severable and in the event any of them shall be held to be invalid, this Agreement shall be interpreted as if such invalid provisions or covenants were not contained herein.

8.  **Termination.**

a. **Death of Attorney.**  In the event Attorney shall die during the term of this Agreement, Attorney's employment shall terminate immediately and Attorney's Estate shall be paid such compensation as would have been owed to Attorney as if Attorney was terminated without cause pursuant to paragraphs 8(c)(ii) or 8(d), as more fully explicated in paragraph 8(f).

b. **Discontinuance of Business.**  If during the term of this Agreement, the Firm should discontinue the operation of business, Attorney's employment shall automatically terminate as if Attorney was terminated without cause pursuant to paragraphs 8(c)(ii) or 8(d), as more fully explicated in paragraph 8(f) and without further liability on either of the parties, except that Attorney will be paid such compensation as would have been owed to Attorney under the paragraph 8(f).

c. **By the Firm.**

i. **For Cause.**  The Firm may terminate Attorney's employment and discharge Attorney without notice upon the suspension or termination of Attorney's license to practice law in the State of Georgia or Alabama or if in the judgment of the Firm, Attorney has committed an act of fraud or dishonesty; breached any rule, canon, or code of the legal ethics in force in the State of Georgia or other jurisdiction where performing employment duties to the detriment of the Firm or any Client; willfully damaged or injured the property, business, or good will of the Firm; willfully failed to observe any written rule, written policy, or reasonable directive of the Firm's management; or violated any of the covenants, terms, or provisions of this agreement to be performed by Attorney.

ii. **Without Cause.**  The Firm may terminate Attorney's employment at any time and for any reason upon giving Attorney at least thirty (30) days written notice.  During such notice period, the Firm and Attorney

shall send a joint notification to all Clients represented by the Attorney advising them of their right to remain with the Firm or continue to be represented by Attorney. Neither Attorney nor the Firm shall disparage each other in an effort to persuade the Client in making such election. The Attorney and the Firm shall cooperate during that period to ensure that the Client's interests are fully protected

d.  **By Attorney.**  Attorney may terminate Attorney's employment at any time giving the Firm at least 30 days written notice. During such notice period, the Firm and Attorney shall send a joint notification to all Clients represented by the Attorney advising them of their right to remain with the Firm or continue to be represented by Attorney. Neither Attorney nor the Firm shall disparage each other in an effort to persuade the Client in making such election. The Attorney and the Firm shall cooperate during that period to ensure that the Client's interests are fully protected

e.  If Attorney is terminated for cause pursuant to paragraph 8(c)(i), Attorney shall not receive any compensation for files that are not completely closed on the last day of employment. A file is considered closed when the firm has received a signed settlement agreement, signed release, and settlement payment and all liens or post-settlement issues are resolved.

f.  If Attorney is terminated without cause pursuant to paragraphs 8(c)(ii) or 8(d), Attorney shall be compensated pursuant to paragraph 6 for any files that have an enforceable settlement agreement prior to the last day of Attorney's employment with the Firm. Such compensation shall be reduced solely by virtue of additional work by the Firm necessary to bring the matter to a close, including receiving settlement payment and resolution of all liens or post-settlement issues.

9.     **Facilities.**  The Firm shall provide Attorney with work space, clerical and technical help as available, and other facilities, equipment, services, and supplies suitable to Attorney's position and adequate for the performance of Attorney's professional and other duties under this Agreement.

10.    **Computer and Internet Use.**

a.  Attorney acknowledges that Attorney will have access to the Firm's server, computers, computer system, e-mail, and the Internet. Employee acknowledges and agrees that: (i) Attorney shall not use e-mail or Internet access for communicating or disseminating inappropriate messages or material, including, but not limited to, offensive jokes, remarks, or pornography; dissemination of chain letters, pursuit of employment, political or fund raising purposes (except as authorized by the firm), or conducting lotteries or pools; (ii) Attorney shall not use the Firm's computer system in violation of Firm policies;

(iii) Attorney shall not use the Firm's computer system to engage in any illegal activities, including without limitation: harassment, discrimination, defamation, infringement of copyright or trademark laws, offering for sale, purchase, or use any prohibited or illegal substances; (iv) Attorney shall not use the Firm's computer system for private financial gain, or commercial, advertising, or solicitation purposes; (v) Attorney shall not use, copy or download information from the Firm's computers or computer system for any purpose other than providing services on behalf of the Firm and Clients; (vi) Attorney may use e-mail or the Internet from his or her workstation during Attorney's personal time provided that it is of an occasional and incidental nature and is not otherwise contrary to the Firm's policies or business interests.

b. Attorney acknowledges and agrees that upon termination of his or her employment, for any reason, Attorney shall not delete, copy, download, or otherwise transfer any information from a Firm computer, and that Attorney will immediately upon the request of the Firm delete any and all files on Attorney's personal computer relating to the Firm. Attorney acknowledges and agrees that any copying, downloading, deleting or transfer of information from such computers as prohibited above, or failure to delete any Firm information from Attorney's personal computer immediately upon the Firm's written request, upon termination of employment shall constitute a violation of the Firm's computer use policy, as well as the Georgia Computer Systems Protection Act. The parties anticipate that it that Attorney will retain copies of work product he has created while at the Firm and agree to engage in good faith discussions to identify any such work product. Further, this agreement shall not prohibit Attorney from retaining copies of work that he created prior to joining the Firm, even should he use such work during the course of his employment with the Firm for the benefit of the Firm's clients.

c. Attorney acknowledges and agrees that: (i) all electronic mail communication systems and all communications and information transmitted by, received from or stored on the Firm's computer system do not belong to Attorney; (ii) Attorney has no personal expectation of privacy vis a vis the Firm in files, disks, documents, etc. which have been created on, entered on, stored on, downloaded from, or used on the Firm's computer system; and (iii) Attorney acknowledges that the Firm may monitor the use of the e-mail system and the Internet from time to time, to ensure that the use of these systems is consistent with the Firm's legitimate business interests.

11.  **Referral of Cases.**  Every time Attorney refers a Case to another law firm other than the Firm or to any attorney not employed by the Firm, Attorney shall use Attorney's best efforts to include a provision in the referral agreement between the Firm and such referred law firm or attorney to the effect that the Firm shall serve as co-counsel for all such referred cases and all Legal Fees and reimbursements for Cases related out of pocket costs or expenses shall be promptly remitted and paid directly to the Firm and not to At-

torney or to anyone else, unless, due to exigencies unique to the Case, such efforts would be detrimental to the prospective client.

12.     **Right to Inventions, Designs, Documents, Marks, Names and Trade Secrets.** Attorney agrees that Attorney will promptly from time to time fully inform, disclose and assign to the Firm all inventions, designs, documents, marks, names, improvements, discoveries, products, results of research and development of the Firm or of any Affiliate, Trade Secrets and proprietary information, which pertain or relate to the Firm's Business or the business of any Affiliate, or any business incidental or related thereto, and which in whole or in part are derived from or are the result of Attorney's work with the Firm, that Attorney shall conceive, make or come into possession of during Attorney's period of employment with the Firm under this Agreement. The Firm may, at its own expense, prepare and prosecute applications for copyrights, trademarks, service marks, trade names or letters, patent, or may take other actions that it deems necessary or appropriate to protect its rights, with respect to the aforementioned items. Simultaneously with the preparation of such applications, or the taking of such other protective actions, Attorney shall execute such applications and assign them to the Firm and shall cooperate with the Firm in any such other protective actions, and Attorney shall thereafter from time to time, as required, execute all further papers pertaining to said inventions, designs, documents, marks, names, improvements, discoveries, Trade Secrets, applications and protective actions and shall otherwise cooperate with the Firm in enforcing and protecting the rights and position of the Firm hereunder. In said regard Attorney specifically acknowledges and confirms that all websites or blogs created or co-created by Attorney related to the Firm's Business during the Term of this Agreement shall be the sole property of and remain solely owned by the Firm at all times during the Term of this Agreement and subsequent to the termination hereof for any reason, and Attorney covenants and agrees to at all times execute and deliver to the Firm any and all papers, documents, applications and assignments of any kind reasonably requested by the Firm to convey all rights, title and interests in and to any such websites or blogs and sole ownership thereof to the Firm. The provisions of this paragraph 12 shall survive the termination of Attorney's employment under this Agreement, regardless of the date, cause or manner of such termination. However, nothing in this provision shall prevent the attorney from retaining the right, title or ownership interest in any work that might be described or covered by this provision if the attorney discloses to the firm her intent to engage in that activity before commencing that work and receives an acknowledgement from the firm that the work, is outside the scope of her employment.

13.     **Indemnities and Insurance.** The Firm shall obtain and maintain in full force and effect during Attorney's employment under this Agreement a policy or policies of malpractice insurance incurring the Firm and its professional employees from and against any and all liabilities, costs, damages, expenses, and attorney fees resulting from or attributable to any and all acts and omissions of the Firm and its professional employees. The Firm shall request that its professional liability insurance carrier add attorney to the Firm's professional liability insurance policy, at no cost to Attorney.

10

a) Any settlement, award, judgment, costs (including defense costs), or other amount for which Attorney may become liable as a result of any other claim associated with Attorney's practice of law, which are not as a result of malpractice or not otherwise covered by said insurance, shall be sole responsibility of Attorney, and not the Firm.

b) Attorney must apprise his or her supervising attorney immediately of any threats of sanctions. If the Firm is not so apprised, any such sanction shall be the sole responsibility of Attorney, and not the Firm. Unless the Firm otherwise chooses, Attorney is responsible for fifty percent of any sanction that is imposed against her.

14. **Promotion of the Firm's Goals and Image.** The Firm is committed to providing its Clients with competent legal services, including, but not limited to, prompt personal attention to any and all legal problems facing its Clients which arise out of the matter on which the Firm is engaged. Attorney understands the Firm's commitment and further understands that the Firm is genuinely concerned with the Clients satisfaction. Consistent with this philosophy and the Firm's reputation of serving Clients, reliability, being sensitive toward Clients, understanding of Clients' needs and concerns, promptly returning telephone calls, being responsive to Clients, and providing personal attention to Clients, Attorney agrees to do Attorney's best to embody these ideals, and to promote the Firm's good professional image, as well as Attorney's own good image, to Clients, to opposing parties, advisors, and counsel, and to the public in general.

15.         **Non-Disparagement.**

a. During the term of this Agreement and after its termination, Attorney and the Firm shall not publish, utter, broadcast, or otherwise communicate any information, misinformation, comments, opinions, remarks, articles, letters, or any other form of communication, whether written or oral, regardless of its believed truth, to any person or entity (including, without limitation, any of the Firm's clients, prospective clients, co-counsel, vendors, or competitors) which is adverse to, reflects unfavorably upon, or tends to disparage the Attorney, the Firm, its clients, prospects, or financial condition of the Firm, or any member, officer, director, manager, or employee of the Firm.

b. Nothing in this paragraph 16 shall be construed to prevent either Attorney or the Firm from giving truthful testimony at any hearing, trial, deposition, or arbitration, or otherwise complying with any obligations imposed by law.

16. **Attorney's Warranties and Miscellaneous Covenants.**

a. Attorney certifies that Attorney has never been the subject of reprimand or disciplinary action or refused admission to the bar by any bar association, court, or administrative agency, and Attorney further agrees to notify the Firm immediately if any disciplinary procedure of any nature is threatened or initi-

11

ated against Attorney, to immediately furnish the Firm with a copy of any letters, notices, or other documents relating to the proceedings, and to keep the Firm advised of the material developments of the proceeding. Notices shall be forwarded to the Firm and its Managing Partner.

b. Attorney agrees to notify the Firm immediately if, while providing legal services on behalf of the Firm, Attorney believes there may be an occurrence of negligence or malpractice or a conflict or potential conflict of interest has arisen.

c. Attorney agrees not to enter into business ventures with any Clients of the Firm, and further agrees not to serve as a director, officer, trustee, partner, or employee of any Client,  or other law firms.

17.    **Responsibilities on Termination.**

a. **Client Files.**  All files, records, and documents pertaining to Clients of the Firm or to professional services rendered by or for the Firm shall belong to and remain the property of the client Attorney shall not be entitled to possession of nor access to files and documents pertaining to the matters of any clients of the Firm, even those matters on which Attorney worked, unless and until such clients so direct, and possession of any such files and documents, or copies thereof, by Attorney without such a direction having been given shall be without authorization and considered a breach of this Agreement, except as specifically provided herein with respect to Attorney's work product. If a Client has given written permission to Attorney to take a Client's file, Attorney shall not copy Client files without first giving notice to the Firm.

b. **Firm Documents.**  All general files, documents, briefs, and other tools of law practice of the Firm shall remain the Firms' property, subject to the provisions of Paragraph 10(b), and no hard or digital copies may be taken by Attorney without express written permission from the Firm. Any compensation of any kind due Attorney at the time of such termination or expiration of this Agreement may be withheld by the Firm pending receipt of such property. The provisions of this Section 19(c) shall survive the termination of Attorney's employment under this Agreement, regardless of the date, cause, or manner of such termination.

c. **Clients.**  Attorney agrees that the Firm invests significant amounts of time, money, and energy on advertising, business development, and brand recognition to procure its clients and cases. Attorney further agrees that the Firm spends significant amounts of money on overhead expenses and invests significant amounts of time, money and energy in the cases it pursues and that sometimes the Firm does not recover its out-of-pocket advanced expenses or its fees. Although Clients generally have the right to legal representation of

12

their choice, it is understood that Attorney owes contractual and fiduciary duties to the Firm. Attorney acknowledges that any action or communication with a Client of the Firm to solicit or seek to persuade such Client to terminate representation by the Firm and its attorneys except as provided under Paragraph 8(c)(ii) and (d), and to retain the Attorney who intends to leave the Firm as Attorney's own Client could be a breach of Attorney's fiduciary duties and breach of this Agreement.

d.  If Attorney's employment is terminated, either by the Firm or Attorney, the parties agree to the following:

    i.  Prior to any notice of Attorney's departure to any Client, written notice of Attorney's termination must be made by or to the Firm.

    ii.  While employed by the Firm, Attorney agrees (1) that Attorney will not communicate with any Firm Client or Firm Referral Source regarding Attorney's termination, desire or intent to leave the Firm, and (2) that Attorney will not solicit any Firm Client to leave the Firm and follow Attorney to Attorney's subsequent law firm.

    iii.  Attorney agrees not to inform any Client that Attorney is leaving the Firm, orally or in writing, prior to the delivery of written notice to client as provided in Paragraph 8(c)(ii) and (d)

    **iv.  Filing of withdrawals.**

        1.  Upon providing notice of resignation or receipt of termination with or without cause, on all cases in which Attorney is an attorney of record and where the Client decides to continue to be represented by the Firm, Attorney agrees to file a notice of withdrawal at a time mutually agreed upon with the Firm.  The Firm agrees likewise to file a notice of withdrawal or substitution on all cases where the Client decides to continue to be represented by the Attorney.  Attorney authorizes the Firm to file said withdrawals or substitutions on behalf of Attorney after the Attorney has left the firm and the Client has chosen to continue to be represented by the Firm. The Firm authorizes the Attorney to file said withdrawals on behalf of the Firm after the Attorney has left the firm and the Client has chosen to continue to be represented by the Attorney.

If the Firm is terminated by a Client who was formerly co-represented by Attorney while employed by the Firm, the Firm shall have the right to file an attorney lien to the extent permitted by Georgia law. **Fees owed to the Firm**:

13

1. In the event a Firm Client decides to terminate the attorney-client relationship with the Firm and engage Attorney or Attorney's new law firm, then Attorney agrees that the Firm will be entitled to immediate repayment of all costs and expenses paid by the Firm on behalf of the Client, and the Parties agree that the quantum meruit value of the contributions of the Firm to each pending contingency case while the Attorney was employed by the Firm is the greater of (a) the value of the hours expended by the Firm, including the Attorney's time or (b) the following percentages of fee recoveries (net of all referral or co-counsel fees) constitute:

| Category | Stage of Pending Case | % Attributable and due to Firm |
|---|---|---|
| 1 | Retained through filing of suit | 25% |
| 2 | Suit filed through completion of discovery | 50% |
| 3 | Completion of discovery to start of trial | Distributed using the process and percentages outlined in Exhibit B |
| 4 | Start of trial through verdict or judgment | Distributed using the process and percentages outlined in Exhibit B |
| 6 | Verdict Sustained | Distributed using the process and percentages outlined in Exhibit B |
| 7 | Settlement reached | Distributed using the process and percentages outlined in Exhibit B |
| 8 | Case referred out | Distributed using the process |

14

| | | and percentages outlined in Exhibit B |
|---|---|---|

a. Should more than one of the categories above apply to a particular Client's case, the Firm shall be entitled to the higher category percentage. Attorney agrees that Attorney will consent to having a Court split the attorneys' fees in accordance with the above schedule. Attorney agrees that should any percentage in the above-referenced schedule of percentages be held unenforceable, that the Firm is entitled to a fee split of no less than 50 %Unless a Court having jurisdiction over the award of attorneys' fees issues an Order providing for a division of fees other than as set forth above, Attorney agrees that Attorney will pay the Firm out of Attorney's fee award so that the applicable percentage above is reached.

b. Attorney agrees that the Firm shall be entitled to file and has a valid attorney lien on matters in which a Client terminates the Attorney-Client relationship with the Firm and engages Attorney or Attorney's new law firm, upon Attorney's termination with the Firm. Attorney further agrees that the attorney lien amount shall be the total of all costs and expenses paid by the Firm on behalf of the Client plus the applicable percentage above. Attorney agrees not to contest or challenge any attorney lien asserted by the Firm pursuant to this subsection.

c. Attorney further agrees that until all such matters have been fully resolved, Attorney shall disclose the obligation contained in this paragraph to any law firm that employs Attorney. Notwithstanding this duty to disclose, Attorney agrees Attorney is bound by the confidentiality provision contained in paragraph 32 of this Agreement and shall not disclose the remaining provisions of this Agreement.

d. Should (1) Attorney become employed at a law firm after termination with the Firm, (2) a Firm Client terminate his or her relationship with the Firm and engage Attorney's new law firm, and (3) the new law firm fail or refuse to pay the Firm as per the quantum meruit amounts provided above, Attorney agrees to cooperate with the Firm in seeking to enforce this agreement against the new law firm, including paying any portion of the fee Attorney receives personally to the Firm, up to and including the full amount received by Attorney.

15

2. In the event a Firm Client stays with the Firm, then Attorney agrees that the Firm will be entitled to the full amount of any attorney fee recovered, except with regard to cases which have been settled, in which case Attorney's compensation shall be governed by Paragraph 8(f). Attorney agrees not to file an attorney's lien in any of those cases. In the event that Attorney files an attorney's lien in any of those cases, then Attorney shall voluntarily dismiss and withdraw any such attorney's lien within five (5) days from Attorney's receipt of written notice from the Firm demanding that Attorney do so. If Attorney fails or refuses to do so, then Attorney agrees to reimburse the Firm's actual attorneys' fees and litigation expenses incurred to enforce this provision.

v. In the event Attorney solicits any Firm Client during employment, prior to providing notice of termination to the Firm or the Firm solicits any Attorney assigned Client during Attorney's employment, prior to providing notice of termination to the Attorney, or prior to the Firm and the Attorney providing the joint notice to the Client as provided above, the soliciting Party will forfeit all compensation that may be owed to such soliciting party with regard to the matter at issue at the time of termination from whatever source or basis and will pay back any compensation paid to such soliciting Party between the time of the first solicitation of the Client and Attorney's termination.

vi. Except as explicitly provided herein, in the event of a breach of fiduciary duty with respect to the termination and/or departure of Attorney, the statutes, rules of professional conduct, and common law of the State of Georgia shall govern what share, if any, Attorney is to receive in future recoveries on pending contingency fee cases.

e. **Notice of Potential Claims.**  Attorney agrees that, no later than five (5) days after the effective date of termination (whether with or without cause), Attorney will honestly and completely disclose the information requested in Exhibit C, attached hereto.

f. **Cooperation.**  Attorney shall cooperate with the Firm to the extent reasonably requested by the Firm from time to time in connection with Firm matters to ensure a smooth transition that protects of the client which may arise as a result of legal services rendered by the Firm prior to Attorney's termination of Attorney's employment with the Firm including, without limitation, transition of files and collection of fees.

20. **Dispute Resolution.** Any dispute, controversy, or claim arising out of, in connection with, or relating to, Attorney's employment, this Agreement, the breach or alleged breach this Agreement, or the termination, enforcement, interpretation, or validity of this

16

Agreement, including the determination of the scope or applicability of this provision, shall first be mediated in confidence and in good faith, with the costs of the mediator split between the parties with twenty-five (25) percent paid by the Attorney and seventy-five (75) percent by the Firm, subject to any later agreement reached at mediation.

21.    **Joint Preparation.**  All Parties to this Agreement have negotiated it, and have had the opportunity to consult with and be represented by their own competent counsel. This Agreement is therefore deemed to have been jointly prepared by the Parties and any uncertainty or ambiguity existing in it shall not be interpreted against any party, but rather shall be interpreted according to the rules generally governing the interpretation of contracts.

22.    **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the Firm, its successors and assigns. This Agreement shall be binding upon and inure to the benefit of Attorney, Attorney's heirs, executors, and administrators.

23.    **Assignment and Delegation.**  The Firm may assign its rights and delegate its performance under this Agreement. Attorney shall not assign Attorney's rights or delegate Attorney's duties under this Agreement, except in the event of Attorney's death, Attorney's right to compensation under Paragraph 8(f) shall be automatically assigned to Attorney's estate.

24.    **Notices.**  Any and all notices referred to herein shall be sufficient if furnished in writing delivered in person, or sent by mail to the respective parties at the addresses set forth below their signatures to this Agreement or such other addresses as they shall from time to time furnish to each other by written notice.

25.    **Choice of Law.**  This Agreement shall be construed in accordance with the laws of the State of Georgia and the Georgia Rules of Professional Conduct without giving effect to otherwise applicable principles of conflicts of law.

26.    **Integration.**  This Agreement constitutes the entire agreement between the parties, and any prior understanding or representation of any kind preceding the date of this Agreement shall not be binding on either party except to the extent incorporated in this Agreement. This Agreement may not be changed or modified orally but only by an instrument in writing signed by the parties hereto, which instrument states that it is an amendment to this Agreement.

27.    **Withholding.**  The Firm shall withhold and collect from any and all compensation and benefits paid hereunder all taxes (including without limitation, Federal income taxes, Federal Insurance Contributions Act taxes and state or local income, payroll and wage taxes) required to be withheld or collected therefrom.

28.    **Equitable Remedies.**  The parties confirm that damages at law may be an inadequate remedy for a breach or threatened breach of this Agreement. The parties agree that, in the event of a breach or threatened breach of any provision hereof, the respective rights

and obligations hereunder shall be enforceable by specific performance, injunction, or other equitable remedy. Nothing herein contained is intended to nor shall it limit or affect any rights at law or by statute or otherwise of any party aggrieved as against the other for a breach or threatened breach of any provision hereof. It is the intention of the parties hereto that their respective rights and obligations hereunder shall be enforceable in equity as well as at law or otherwise.

29.    **Attorney's Fees.**  In the event of the default or breach of this Agreement in any way by either of the Parties hereto, precipitating either judicial or non-judicial enforcement hereof, the prevailing party shall be entitled to collect all reasonable costs and expenses of such enforcement, or in recovering any damages arising therefrom, specifically including reasonable attorney's fees and arbitration and/or court costs.

30.    **Execution.**  This Agreement may be executed in duplicate counterparts, each of which shall be deemed an original hereof. A facsimile signature shall be deemed an original signature.

31.    **Confidentiality.**  Unless required by law to do so or per the requirements of Paragraph 19(e) of this Agreement, the Parties shall keep the terms of this Agreement confidential, and none of the Parties shall divulge any term of this Agreement, specifically including (without limitation) the monetary compensation and consideration for this Agreement. Notwithstanding the foregoing, the Parties may, without violating this confidentiality provision, voluntarily comply with any and all governmental and/or quasi-governmental reporting requirements applicable to such Party, may disclose the terms of this Agreement to their respective attorneys, accountants, financial advisors, and spouses, and may disclose this Agreement to the extent necessary and making every reasonable effort to maintain confidentiality of this Agreement, in the event of a mediation pursuant to this Agreement or an action to enforce this Agreement..

32.    **Waiver.**  No waiver, modification, or amendment of this Agreement shall be binding unless in writing and executed by all Parties. No waiver of any provision of this Agreement shall be deemed a waiver of any other provision, nor shall any waiver constitute a continuing waiver. No evidence of any waiver or modification shall be offered or received in evidence of any proceeding, arbitration, or litigation between the parties hereto arising out of the parties hereunder, unless such waiver or modification is in writing, duly executed as aforesaid, and the parties further agree that the provisions of this section may not be waived except as herein set forth.

33.    **Survival.**  All provisions of this Agreement intended to survive the termination of Attorney's employment under this Agreement, whether or not so expressly stated herein, shall indeed survive the termination of Attorney's employment under this Agreement to the extent provided therein, regardless of the date, cause or manner of such termination, and such termination shall not impair or otherwise affect either Party's obligations to strictly observe the provisions of this Agreement.

34.    **Severability.**    All agreements, provisions, and covenants contained herein are severable and in the event any of them shall be held to be invalid, this Agreement shall be interpreted as if such invalid agreements or covenants were not contained herein.

**IN WITNESS WHEREOF** and in agreement herewith, the Firm and Attorney have executed and delivered this Agreement, as of the date first above written.

Barrett & Farahany

By: _____
Amanda A Farahany (Sep 3, 2021 12:38 EDT)

Name:  Amanda Farahany
Title:   Managing Partner

1100 Peachtree Street NE, Suite 500
Atlanta, Georgia 30309

_____
Kira Fonteneau

4198 Paxton Place
Birmingham, Alabama 35242

19

## **EXHIBIT D**

1.  Are you aware of any malpractice claim or potential malpractice claim that may have arisen in the Firm matter from January 1 of last year to the present?

    Yes                    <u>No</u>

2.  If the answer to #1 is Yes, please describe in detail the claim(s) or potential claim(s), including the client name, the file number, a description of the acts or omissions giving rise to the claim(s) or potential claims(s), and any actions taken after discovery of the claim(s) or potential claim(s).

    _____
    _____
    _____
    _____
    _____
    _____

3.  Are you aware of any sanctions or threats of sanctions or sanctionable action that may have arisen in the Firm matter from January 1 of last year to the present?

    Yes                    <u>No</u>

4.  If the answer to #1 is Yes, please describe in detail the sanction(s) or potential sanction(s), including the client name, the file number, a description of the acts or omissions giving rise to the claim(s) or potential claims(s), and any actions taken after discovery of the claim(s) or potential claim(s).

    _____
    _____
    _____
    _____
    _____
    _____

_____
Signature

<u>Kira Fonteneau</u>
Printed Name

<u>09/02/2021</u>
Date

20

# **EXHIBIT E**

Re: [client/matter name]

On [date], [departing lawyer] [is leaving/left] our firm to [join the law firm of [name]]/[commence practice as a sole practitioner].

Because you were working with [departing lawyer] as your designated lawyer on the above matter, we are required by the rules regulating attorneys to inform you that you have the right to choose to have [departing lawyer] to represent you in this matter from [his/her] new firm, or you may have our firm continue to represent you, in which case the file will be handled by [firm lawyer], or you can choose to retain an entirely new lawyer.

If you wish to have [departing lawyer] or a new lawyer continue to represent you, arrangements to secure your outstanding account with us will have to be made with the Firm, as you may be liable for fees or costs for services already provided by the firm.]

[If applicable: Any retained/unspent fees or costs currently held by the firm will be promptly returned or transferred to [departing lawyer] or [new lawyer] as you designate.

Please advise [departing lawyer] and us, as quickly as possible, of your decision so that continuity in your representation is assured. You may do so by indicating your choice below and returning [a signed and dated copy in the enclosed stamped envelope/this email] within ten (10) days. Please retain the additional copy of this designation letter for your records.

Yours truly,
[for the firm]

Instructions

o I wish my file to stay with Barrett & Farahany.

o I wish my file [and trust account balance] to be transferred to [name of departing lawyer]

o I will retain new counsel and have them contact Barrett & Farahany.

21

# b&F K

Final Audit Report                                                              2021-09-03

| | |
|---|---|
| Created: | 2021-09-03 |
| By: | Kira Fonteneau (kira@5pointslaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAASszd_XKzOvLjtTTjOp4Cc3cKfWQpOqGc |

## "b&F K" History

📄 Document created by Kira Fonteneau (kira@5pointslaw.com)
2021-09-03 - 2:25:12 AM GMT- IP address: 99.110.59.146

📧 Document emailed to Amanda A Farahany (amanda@justiceatwork.com) for signature
2021-09-03 - 2:25:44 AM GMT

📄 Email viewed by Amanda A Farahany (amanda@justiceatwork.com)
2021-09-03 - 4:37:45 PM GMT- IP address: 3.237.199.191

🖋 Document e-signed by Amanda A Farahany (amanda@justiceatwork.com)
Signature Date: 2021-09-03 - 4:38:24 PM GMT - Time Source: server- IP address: 174.216.9.32

✅ Agreement completed.
2021-09-03 - 4:38:24 PM GMT