# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

**JEREMY DRUMMOND,**

          **Plaintiff,**

v.                                              Case No.: 1:24-cv-00072-TFM-B

**STRATUS NEURO,**

          **Defendant.**

### REPLY IN SUPPORT OF MOTION TO QUASH

Comes now, Plaintiff, Jeremy Drummond and files this reply in support of his Motion to Quash the lien filed by Constance Cooper in the above styled case. Cooper's filing appears to conflate the existence of a potential contractual claim for fees with the availability of a statutory lien as a mechanism to enforce contractual obligations. To be clear, at no time has any person claimed that Cooper's firm was was devoid of any claim to compensation on a quantum meruit theory. Nor has the firm made a demand for a sum certain and been denied. Instead, the Barrett & Farahany firm has been asked what fee it believed was owed under the fee agreement and has failed or refused to reduce its request to a sum certain thereby needlessly holding up a settlement for no apparent reason. Instead, the Motion to Quash has clearly indicated that the imposition of a lien is not a method available to a firm under Alabama law. Only lawyers may assert liens. This Court is without authority

to adjudicate a statutory lien where the party asserting it has no standing. As such, Cooper and Barrett & Farahany must use other methods to collect what it believes it is owed.

The law of attorneys liens in Alabama is well settled. In order to assert a lien in a case, the party asserting the lien must have been an attorney of record at some time during the pendancy of the case. Cooper, who filed the lien in this case purportedly to protect the interest of a law firm or its sole owner Amanda Farahany, has never performed any work on the case and lacks standing to file a lien. Ala. Code §34-3-61 governs the assertion of attorneys' liens. The statute clearly states that the protections afforded under the statute are available only to **attorneys-at-law**. Nowhere in the statute does it provide a procedure for a law firm to assert a lien.

After Cooper began filing no less than 51 liens in cases all over Alabama, counsel sent Cooper emails in this and other cases advising that the liens were improper under Alabama law and urging her to withdraw them. Hearing no response to the reasonable request to withdraw the liens, Plaintiff's counsel began to file motions to quash in this and other cases so that cases that are resolved can be disbursed. On November 19, 2024, Judge Liles Burke of the Northern District of Alabama held an in-person hearing to address the issues raised in the Motion to Quash. Cooper failed to appear as ordered. Instead, the firm's attorney appeared.

During that hearing, a copy of the transcript of which is attached as Exhibit A, the judge admonished Darren Summerville, Barett & Farahany's counsel for lapses in the duty of candor to the tribunal twice after finding that he and/or Cooper had misrepresented the holding and analysis of two cases it claimed supported its position.

> THE COURT: So I've just read Shelby Roden, and it does say the protection afforded by the statute is not limited to attorneys of record at the time of settlement or when the judgment is rendered, but it also goes on to quote from Twin Pines and say that at some point you've got to have been the attorney of record.
>
> MR. SUMMERVILLE: I think the distinction I would like the Court to draw is that an individual attorney of record --
>
> THE COURT: But that's something you should have told me instead of me having to read that. You've cited this case for a point that it doesn't stand for.
>
> MR. SUMMERVILLE: I mean, if I misread --
>
> THE COURT: That's not what this case says. You have a duty as an attorney to present me a fair interpretation of the law and not just put any skew you want to on a case, sir.
>
> MR. SUMMERVILLE: I agree.
>
> THE COURT: Why would you not have told me that the very next line in this case that you've cited did away with what you said?
>
> MR. SUMMERVILLE: I think it's two different propositions of law is what I was trying to tell the Court. I mean, there's no question that the language in Eaton is

3

rejected in the Rose case, the Triplett case, and then Shelby
cites one of -- Triplett, if I remember correctly. And I don't
know how to really reconcile those unless the distinction I am
trying to draw about the individual being counsel of record
versus a firm being counsel of record is a meaningful one.
That's --

THE COURT: Here would be my view. And if you have
some case law you can show me, I am certainly willing to look at it. I
know this is a Southern District of Alabama opinion.
Great judges down there, smart guys and ladies. But this is a
state law question, and so what the Alabama Court of Criminal
Appeals -- Court of Criminal Appeals -- Court of Civil Appeals
said in Eaton appears to me to be binding law and a
straightforward interpretation. Why should I steer in any
direction than from that? At most, the Southern District's
ruling is persuasive, but I've got Eaton which is a straight up
interpretation of Alabama law which I'm supposed to apply here.
So tell me about that.


Quick v. Dejoy 11.19.24 Hearing Transcript pp. 7-11

Thereafter, the Court read another case cited by Cooper in her brief and

addressed Mr. Summerville again.

THE COURT: So I've just read Triplett, which is the
Alabama Supreme Court case. And in Triplett, it was the lawyer
who sought protection in the lien, was an attorney who had been
attorney of record in the case. I mean, again, I'm -- and just
as with Shelby, I do not find that this case stands for the
proposition that Ms. Cooper is citing it for. I will just have
to say again, you know, if you come into US District Court, you
have a duty of candor to the Court and to the other attorneys
to fairly present the facts and holding of the case. Now, that
doesn't mean you can't, you know -- if a case could, you know, could
reasonably be argued either way, that you can't say what

4

you believe and argue is what is the basis of your case. But
you have cited cases -- basically, you haven't, but your
partner has cited cases for propositions that they simply do
not stand for on a plain first-time reading.
Now, I will tell you there are US district judges who
would sanction you today for that. I'm not going to do that
because you didn't write this, and I think at the last minute
you got sailed over here by the seat of your pants. Am I
correct about that?

MR. SUMMERVILLE: Yes.

THE COURT: Now, have you -- I assume you've read
these cases.

MR. SUMMERVILLE: Yes, sir.

THE COURT: Would you agree with me that these cases
do not support your position? I'm not going to sanction you.
You didn't write this, but I am asking you to give me your
honest opinion. Would you agree with me that Shelby Roden and
Triplett do not support your position for attorneys here?

MR. SUMMERVILLE: I think that there are statements in
those cases that are outlined as propositions of the law that
the -- the lien statute is not limited to an attorney who is
counsel of record as when the settlement or the judgement is
effectuated. So I think that should be correct if judges are
correctly interpreting the lien statute.

THE COURT: But those state -- those cases also say
that they are limited to those who at least at some point were
attorneys of record.

MR. SUMMERVILLE: I agree that it says that too and
thus the point when I say that it is irreconcilable, then that
-- I don't know how to handle that except --

THE COURT: It's not irreconcilable. It's --

5

>MR. SUMMERVILLE: Well, here's --
>
>THE COURT: -- it is easily understood. I think I
>have covered the point. I don't see that an attorney's lien
>can attach here. You know, I do absolutely agree with whatever
>judge advised y'all to sit down across the table, and I've got
>a table that y'all can sit down and talk at today. And it
>would be my hope that you would settle it. You know, I also
>will say that while I don't believe the attorney's lien can
>attach, I hear Ms. Fonteneau and her colleagues absolutely
>saying yeah, we owe them money and under another theory they
>prevail. So it seems to me that if y'all sit down, you surely
>can work that out. We've got the rest of the day. Do y'all
>want to sit down in one of my attorney rooms and talk right
>now?
>Quick v. Dejoy 11.19.24 Hearing Transcript pp. 16-18

After the hearing, a lawyer for the undersigned's firm sent Cooper Exhibit B an email containing a copy of the transcript and again urged Cooper to withdraw the liens as the cases cited do not support the firm's position. Despite this reasonable request to withdraw the liens, and an upcoming mediation to officially resolve this, Cooper persisted in filing this and other responses, again mischaracterizing the law.

Lacking statutory authority for the proposition asserted, Cooper relies heavily upon *Goldberg & Associates v. Donohoe,* 777 So. 2d 144 (2000), for the proposition that a law firm has carte blanch authority to file a lien in a matter if it believes that it is owed fees. This is false and Cooper fails to bring to the Court's attention that the authority cited does not support her position. First, the Court in Goldberg never

addressed the standing issue because the facts of the case did not require such an analysis. The pertinent facts of the case are that:

> Billy Kenneth Benson hired Goldberg & Associates, P.C., a law firm, to represent him in a workers' compensation action against his employer, The Employment Company, Inc.
>
> On February 15, 1999, Benson sent a letter to Goldberg & Associates notifying that firm that he was terminating its representation of him and that he wanted his file forwarded to attorney Cathy B. Donohoe. Until February 1999, Donohoe had been employed as an attorney for Goldberg & Associates. On February 16, 1999, Goldberg & Associates, supposedly on behalf of Benson, filed a complaint seeking workers' compensation benefits. On March 12, 1999, Donohoe filed a notice of appearance in the workers' compensation action. Goldberg & Assocs. v. Donohoe, 777 So. 2d 144, 144 (Ala. Civ. App. 2000)

The facts of the case clearly state and the Alacourt records (Exhibit C) confirm that Davis Middlemas with Goldberg filed the complaint. Nearly a month later, and some two and a half years after the Goldberg firm's representation commenced. Cathy Donohue entered an appearance. After the firm was terminated, it filed a motion to intervene and to seek compensation for 30.75 hours of work it performed on the Plaintiff's behalf before it was terminated. The case action summary further indicates that Middlemas never withdrew from the case. Since a lawyer from Goldberg clearly was an attorney of record and the Court never addressed standing in the context of a firm asserting a lien where no lawyer remaining had served as attorney of record Goldberg simply has no application here. The lien is due to be quashed for lack of standing.

Cooper next provides a string citation of several cases for the proposition that a firm may seek fees after it is terminated. Unfortunately, however, the cases cited by Cooper do not address the threshold issue of standing and the necessity of an attorney of record who had worked on the case to establish a lien. For example, in *Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. v. DuBois*, 266 So. 3d 1064, 1070 (Ala. Civ. App. 2017), the evidence at the hearing was

> that the only attorneys who had worked directly on DuBois's case during the firm's employment were Walker, Rayfield, and O'Hara, and he described the work done during that time as "extensive." Kilpatrick also testified that, during that time, the firm was compensating Walker, Rayfield, and O'Hara and had been incurring costs for overhead expenses. *Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. v. DuBois,* 266 So. 3d 1064, 1070 (Ala. Civ. App. 2017) .

Here again, Cooper fails to inform this Court that the authority she cites is factually distinct from the case at bar. First, the parenthetical concerning the case in Cooper's brief says (law firm entitled to fee) but the Court affirmed the lower court ruling that the firm was not entitled to a fee because the amounts claimed were potentially inflated and the firm improperly assessed charges it was not due under the fee agreement. Further, here again the standing issue was not addressed. In Pope, the evidence was that there were three attorneys who worked on the case. Two of those attorneys left the firm and one remained. Here as in *Goldberg*, the Court did not address the issue of standing. Further, the Court did not rule that the firm was entitled to a fee lien. The Court held that the trial court had not erred in finding that

8

the intervening law firm had failed to prove that it established facts supporting its claim for attorneys fees. Pope provides no factual or legal support for the propositions Cooper asserts and the lien is due to be quashed.

Cooper's string citation also cites *Rose v. Penn & Seaborn*, LLC, 295 So. 3d 94 (2019). Once again, the case does not concern the issue of standing at all and the individuals seeking the lien were attorneys of record. Cooper also cites *Ex parte Lambert Law Firm, LLC,* 156 So. 3d 939, 941 (Ala. 2014), for the proposition that a law firm may assert a lien. However, like in *Rose, Pope* and *Goldberg*, the lawyer asserting the lien in the case, Gary Conchin, was the attorney of record. See Exhibit D, the Alacourt Case Action Summary, showing that the intervenor was the lawyer who filed the lawsuit.

Cooper also cites *Harris v. Cappell & Howard, P.C.,* 280 So. 3d 419, (Ala. Civ. App. 2019), apparently for the proposition that a law firm may assert a lien. The case simply does not stand for the proposition. Read fairly, the case stands for the proposition that if a lien was properly filed by an attorney of record, disbursing the lien proceeds to a law firm instead of the lawyer directly does not make the judgement defective. The Court explained this clearly when it opined the following:

> However, the present case differs markedly from Eaton. In this action, Meadows, as attorney of record, filed the motion pursuant to § 34-3-62 seeking to have the dispute between him and the siblings regarding the amount of the attorney fee decided. The contract in the

9

record appears to be between the siblings and Capell & Howard, although it is signed by Meadows. The judgment ordered that the siblings pay Capell & Howard the attorney fee; however, if the judgment is defective for ordering payment to Capell & Howard, a point that we do not decide, that may be corrected by virtue of a Rule 60(a), Ala. R. Civ. P., amendment to the judgment to [*425] reflect that Meadows is the proper party entitled to the attorney fee.

*Harris v. Capell & Howard, P.C.,* 280 So. 3d 419, 424-25 (Ala. Civ. App. 2019).

In addition, *Harris* clearly undercuts Cooper's argument that Goldberg somehow tacitly overruled Eaton. The ruling in this 2019 case, some 19 years after Goldberg was decided clearly indicates the Alabama Courts still require an Attorney of record file the lien. Cooper cites no case where the Court even considered overturning *Eaton*.

The only case cited by Cooper that appears to support the position that a law firm could file a lien is *Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So. 2d 445 (Ala. Civ. App. 1989),* In that case, the issue of standing was never addressed. But this is of no consequence either because the case was decided two years **before** the controlling precedent in this case, *Eaton*. It has no precedential value.

*Eaton v. Keller Plumbing Co.,* 587 So. 2d 338, 339 (Ala. Civ. App. 1991), is the applicable authority. Cooper alleges without legal authority in support, that

Eaton does not apply, but fails to explain why the case with facts most similar to the ones at bar with a ruling directly on the issue of standing should not be followed. The facts of *Eaton* were that

> Haynes filed a motion claiming a lien for legal services on behalf of the firm of Barrett, Ainsworth, and Haynes, and the subsequent firm of Haynes and Ainsworth. In that claim, Haynes alleged that due to the Chapter 7 bankruptcy of the firms, she was charged with paying the debts of the former firms. After arguments on September 20, 1990, this lien was also vacated, set aside, and held for naught; hence this appeal. *Eaton v. Keller Plumbing Co.,* 587 So. 2d 338, 339 (Ala. Civ. App. 1991).

The case makes clear that the Alabama Court of Civil Appeals had before it the question of whether an attorney could file a lien on behalf of a firm that had previously done work on behalf of the client and it answered in the negative. *Eaton* has never been overruled and Cooper provides no authority that it has. Cooper's response brief is the second iteration of this argument for which there is no legal support. After being warned twice in one hearing about the perils of failing to disclose contrary authority and mischaracterizing holdings, it appears that Cooper and her firm are doubling down. Unfortunately, the brief in this case, like the one that preceeded it in other cases, mischaracterizes the cases and shows a pattern of failure to provide the Court with candid analysis of the facts and law even after prior warning.

**Cooper has failed to properly support the fees claimed with evidence.**

11

Even if there was standing for a firm to pursue a lien, which there is not, Cooper has failed to provide the court in this settled case with the information necessary to ascertain a sum certain due and owing under the contractual agreement that governs the relationship between Barrett & Farahany and Drummond.

Cooper has failed or refused to support the lien notice with a sum certain and asks this Court to award it fees in a way inconsistent with its contract and the Alabama Rules of Professional Conduct. Cooper is not entitled to unilaterally rewrite a fee agreement. The facts are undisputed that Drummond entered into a fee agreement drafted by Barrett & Farahany that contained provisions that spelled out the calculation it would use to determine the amount owed to it in the event of a termination before the contingency occurred. In that agreement, the firm agreed that the quantum meruit value of the services would be determined by multiplying the hours worked by a fixed hourly rate of $400.00 or if a settlement offer was made, 40% of that offer, whichever is greater. In her lien filing, Cooper alleges without providing a copy of the agreement that was within her file, that the fee agreement entitles the firm to fees at a rate of $500.00 per hour or a percentage of the fee dependant on when the matter resolves.

Cooper further alleged in the lien that the amount of the fee could not be ascertained when it had in its possession time records that could have been used to

determine a sum certain as its contract contemplates. Now, in response to the Motion to Quash, Cooper provides the court a copy of the agreement with drastically different terms entitling it to $100.00 less per hour and complains that it does not feel that the time documented is sufficient to compensate the firm. The lien filing therefore contains a material misrepresentation of fact concerning the fees due and owing that would have resulted in a substantial overpayment by Drummond.

Despite being contractually bound to determine quantum meruit based on the hours actually expended on Drummond's behalf, Cooper now seeks to recover based on the common law. Cooper puts forth no authority for the proposition that the drafter of an attorney fee agreement may jettison the agreement because the calculation method it set resulted in a fee that was less than it desired. To support this result, the firm seeks to lay blame upon the undersigned for records it deems incomplete. However, it provides no justification for why the client, the person upon whose case and settlement the lien would attach, who was not charged with keeping up with the time records should pay more because Cooper asserts without evidence, that one or more attorneys it employed failed to keep accurate records of time spent working on the file.

First, it is important to note that while the firm complains of the lack of records, it has its own separate timekeeping system that contains time records yet it

13

failed or refused to produce those records for the period of the representation for the Court to review. The Alabama Court of Civil Appeals addressed just this scenario and held that a law firm that fails to keep accurate contemporaneous records does so at its own peril when it held that;

> In order to establish the "fair value" of its services, the firm was responsible for documenting the basis for its claim in a reasonable manner. Put another way, it was undisputed that Walker, Rayfield, and O'Hara were the firm's employees during its representation of DuBois. In light of its advance consideration that its employment might be terminated, it was incumbent upon the firm to ensure that its employees maintained some reasonable, contemporaneous documentation of the time spent working on DuBois's case, and it bore the risk of failing to do so. *Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. v. DuBois*, 266 So. 3d 1064, 1082 (Ala. Civ. App. 2017).

Barrett & Farahany has put forth no credible argument supporting its contention that its own alleged failure to maintain or produce time records should result in a windfall greater than what it contracted for. Perhaps even more disturbing than the attempt to avoid its own adhesive contract is the attempt to collect an hourly fee greater than that allowed by the contract, which could be construed as a violation of Alabama Rule of Professional Conduct 1.5 forbidding unreasonable fees. There again, the *Pope* court upheld a a trial Court's decision to award no fees or expenses to a law firm where it explained

> Additionally and alternatively, [the firm] has admitted breaching the [fee] contract by improperly charging unlawful interest to DuBois. [The firm] initially sought to recover in its verified Complaint in Intervention interest which was [*1080] later discovered to include charges that vastly exceeded the maximum

14

that could be charged (if interest could be charged at all). The improper charges included interest charged for general overhead, which included money borrowed to pay lawyers their draws. The representative of [the firm, Kilpatrick,] admitted that such practices, which had gone on for years, were both in violation of the [fee] contract and[,] more disturbingly, potentially in violation of the Rules of Professional Conduct. The overcharges were approximately $23,000.00 for interest and other charges. In fact, it appeared that the law firm charged interest at a rate of 65% for a single month. A party who has [**40] breached a contract should not be allowed to sue for breach of that same contract. In equitable parlance, it is referred to as the 'clean hands' doctrine. See *Dixson[ v. C. & G. Excavating, Inc*., 364 So. 2d 1160 (Ala. 1978)]. While ordinarily the Court would be inclined to award at least all legitimate expenses advanced and proven, here the Court cannot sanction the admitted misconduct. The evidence establishes that the law firm was notified in advance of the Complaint in Intervention filed in this case, that it was improper to charge interest the way it had been doing; yet, it continued to do so and did not seek to amend its pleadings until after this came to light at the final hearing. ... The Court is of the opinion that such admitted misconduct taken alone warrants not awarding fees or expenses to [the firm] in this case*." Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. v. DuBois*, Id at, 1079-80.

Barrett and Farahany has not met its burden to establish its entitlement to any sum certain and in the process has misrepresented the amount due under the contract, and withheld key documents necessary to determine the fee due while Drummond's proceeds sit waiting to be disbursed. The Court should quash the lien for lack of support.

For all the foregoing reasons, Plaintiff respectfully requests that the Lien filed by Constance Cooper be quashed and held for naught, or in the alternate, to the extant that it not be quashed that the firm be limited to the amounts it can substantiate as a sum certain consistent with the plain language of the contract governing the termination of the contract.

Respectfully Submitted on November 27, 2024.

                */s/Kira Fonteneau*
                Kira Fonteneau ASB-7338-k58f

                Counsel for Jeremy Drummond

OF COUNSEL:

The Workers Firm LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
T. 404.382.9660

# CERTIFICATE OF SERVICE

I certify that on November 27, 2024, I electronically filed the foregoing document which will serve copies to all counsel of record.

| | |
|---|---|
| Mr. Patrick Schach | Constance Cooper |
| Mr. Tucker Crain | Barrett & Farahany |
| Littler Mendelson P.C. | PO Box 530092 |
| 420 20th Street North, Suite 2300 | Atlanta, GA 30353 |
| Birmingham, AL 35203 | Constance@justiceatwork.com |
| Pschach@littler.com | |
| TCrain@littler.com | |
| Attorneys for Stratus Neuro | |

                */s/Kira Fonteneau*
                Kira Fonteneau